IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

BERNICE FLAX, AS ADMINISTRATRIX OF THE
ESTATE OF CORDELLOS FLAX AND FOR AND ON
BEHALF OF ALL WRONGFUL DEATH
BENEFICIARIES OF CORDELLOS FLAX,
DECEASED, AND CAMIK HAMLET, AS PARENT
AND GUARDIAN OF CORDELLOS FLAX, JR., A
MINOR, AND ZYKERIA FLAX, A MINOR, AS
WRONGFUL DEATH BENEFICIARIES OF
CORDELLOS FLAX, DECEASED,                                                    PLAINTIFFS

VS.                                                           CAUSE NO. 2:09-CV-101-M-D

QUITMAN COUNTY HOSPITAL, LLC,
and LISA COOPER, R.N.,                                                        DEFENDANTS

**ORDER**

This cause comes before the court on its own motion, continuing the trial in the above-entitled action.

This is a medical malpractice and Emergency Medical Treatment and Active Labor Act ("EMTALA") case arising out of allegations that defendant Quitman County Hopsital, LLC, acting through its nurse Lisa Cooper, caused the death of the decedent Cordellos Flax by denying him admission when police brought him to the hospital in a highly intoxicated state. In their complaint, plaintiffs alleged as follows:

> On May 3, 2008, after a few hours of significant alcohol consumption by the Patient, Police Officer Kellery Wright transported the Patient in his patrol car to the Hospital's emergency room at approximately 2:30 a.m.
>
> Nurse Cooper came to the patrol car and briefly looked at the Patient, determined that he was merely intoxicated, and instructed Officer Wright to take the Patient home and let him "sleep it off."

1

Officer Wright transported the Patient to a family member's residence and left him there at approximately 3:00 a.m.

At 6:00 a.m. on May 3, 2008, the Patient's girlfriend found him unconscious and not breathing, so she dialed 911 for an ambulance and tried to resuscitate the Patient.

When the ambulance arrived, the EMTs also initiated efforts to resuscitate the Patient before transporting him back to the Hospital's emergency department.

From the Hospital's emergency department, the Patient was transferred by helicopter to the University of Mississippi Medical Center where he died two days later.

[Complaint at 3-4].

There has been considerable confusion in this case regarding the exact identity of the nurses who acted on behalf of the hospital in this case and regarding the precise nature of their actions. As noted above, the plaintiffs alleged in their complaint that it was Nurse Cooper who came to Officer Wright's patrol car and advised him to take the decedent home. The parties now appear to agree that it was actually a different nurse - Melanie Whalen - who approached the patrol car and communicated with Officer Wright. Nurse Cooper does appear to have played a significant role in the handling of the decedent's case, however. Nurse Cooper was charged by the hospital with the authority to admit patients on the night in question, and it is undisputed that she discussed the decedent's case with Nurse Whalen during his initial visit to the Hospital. In a written statement prepared on the day of the decedent's initial visit, Nurse Cooper described her actions as follows:

> This morning, around 0215, I received a call in the doctor's lounge from Melanie Whalen, RN. She stated that police officers had an intoxicated man in the patrol car and wanted to know what to do with him. I advised that I was happy to see him, but he had to check into the ER. I advised that I had no cure for drunkenness except to sleep it off, but I would evaluate him and if I found anything I could treat that. I also stated that I could give the pt IV fluids, but, that is really not a cure. I told Melanie to call me if the pt checked into the ER. She did not call back, and I assumed the pt

2

> went to jail. At 1010, a pt, Cordella Flax, was brought into ER in cardiac arrest. Charles Rhodes commented that Mr. Flax was the guy in the back of the patrol car from earlier.

In her own written statement, Nurse Whalen provided an account of the relevant events that was consistent with that of Nurse Cooper.

The plaintiffs will no doubt heavily rely upon the accounts of two witnesses which differ markedly from those of Nurse Cooper and Nurse Whalen. In a written police report prepared on May 3, 2008, Officer Wright wrote that, when he arrived at the ER earlier that night "[t]he nurses said they can't see the subject because he was drunk." In his deposition testimony, Wright similarly testified that he was told by a nurse (who he erroneously believed to be Nurse Cooper but was actually Nurse Whalen) that "[t]here ain't nothing we can do with him because he's drunk." When questioned further on this issue, Officer Wright testified that:

> Q: Okay. I'm just asking you about the exact quote you have in your police report here. There's a - the nurses said they can't see the subject because he was drunk.
> Officer Wright: No, they told me to take him back home -
> Q: Okay.
> Officer Wright: Because he was drunk.

Officer Wright also testified that another officer unsuccessfully attempted to revive the decedent with inhalants in the presence of the nurse. Nurse Whalen confirmed in her deposition testimony that she informed Nurse Cooper of the fact that the decedent was unable to be revived with inhalants, and plaintiffs contend that this demonstrates that the seriousness of the decedent's medical condition should have been known to Nurse Cooper.

Significantly, Officer Wright's account of these events was confirmed by the testimony of the decedent's girlfriend, Kenya Braxton. In her deposition, Ms. Braxton provided the following account of Nurse Whalen's actions on the night in question:

3

> She was like, well - what she said was there was nothing that they could do. She said that the ammonia stick wouldn't wake him up and that he was completely intoxicated and drunk and he would just have to go home and sleep it off. They did not take him out of the car. They did not try to or [sic] anything of the sort.
> I asked them was there anything they could do and she was like, no. There's not, and I asked her was she sure and she was like there was nothing they could do on the account that he was completely intoxicated. And she made the statement that as long as we could hear him breathing and his airway wasn't blocked, he was fine.

If the testimony of Officer Wright and Kenya Braxton is deemed credible by jurors, then the defendants may have a hard time persuading them that the hospital's actions on the night of May 3, 2008 were consistent with the standard of medical care.

The court has reviewed the facts of this case in some detail as a predicate for its discussion of how it should be litigated going forward. While it is apparent that this case contains very serious and potentially viable claims, it is also apparent that its litigation is in a state of very considerable confusion mere weeks before the scheduled trial. This confusion is largely the result of the complaint's mistaken identity of Nurse Cooper as the nurse who evaluated the decedent in the parking lot. It is somewhat understandable that plaintiffs would have made this mistake, since Officer Wright was himself mistaken regarding the nurse's identity. Regardless, it is clear that plaintiffs did not respond in a procedurally proper manner once they realized their mistake.

While plaintiffs did acknowledge the mistaken identity in their briefing, this is no substitute for the filing of an amended complaint which makes accurate allegations. This mistake by plaintiffs has compounded itself in the form of a motion for summary judgment filed by Nurse Cooper which is itself based largely on the erroneous allegations in the complaint. It is thus apparent that the court has before it pleadings which have been superseded by events and which do not reflect the facts of this case as all parties acknowledge them to be. Clearly, a complaint is the basis for an entire case,

4

and proceeding under a complaint which is acknowledged by all sides to be erroneous does not strike this court as being a sensible option. Allowing the filing of an amended complaint and revised summary judgment briefing will require a trial continuance, but it seems clear that this case is not presently in a condition to be tried in anything approaching an orderly manner.

Defendants may object to the granting of a trial continuance, but the court concludes that they are also in need of additional time to revise their approach to this case. In particular, the court has concerns regarding defendants' apparent intention to have the jury resolve, through the consideration of expert testimony, issues of law which should be solely addressed, if at all, in the summary judgment context. Most notably, defendants seek to utilize expert testimony at trial to present their argument that no provider-treatment relationship arose between them and the decedent in the case. This court has considerable skepticism regarding any argument that a health care provider owed no duty of care to an unconscious individual who was brought for treatment of severe alcohol poisoning, based on the alleged absence of a patient-provider relationship.[1] Nevertheless, it is clear that this court, rather than a jury, should entertain defendants' arguments in this regard.

Nurse Cooper did, in fact, raise some of these legal issues in her summary judgment motion, but, in light of the proposed expert testimony at trial, it is unclear to the court whether all such legal issues were raised in the summary judgment briefing, as they should be. The court accordingly concludes that all parties should revise their submissions to date so that this case may be litigated in a more orderly fashion. These revised submissions should start with the filing of an amended complaint which makes accurate allegations in light of the known facts, against the proper

---

[1]Indeed, plaintiffs' case is based largely on the notion that the hospital's actions *prevented* the establishment of a provider-patient relationship. Accordingly, defendants' argument seems to establish a Catch-22 which would absolve them of any duty of care in cases such as this one.

defendants.  Thereafter, any defendant who wishes to seek summary judgment may do so, on the basis of a complaint which reflects the plaintiffs' actual allegations in this case.  As noted previously, defendants should raise any issues of law in those motions, rather than attempting to improperly raise them at trial.  The parties may stand on their current motion *in limine* briefing if they wish to do so, but they may also revise this briefing (or their proposed expert testimony), if they so elect, to reflect concerns raised in this order or to address valid objections which have previously been raised by the opposing party.  The trial in this matter promises to be complex under even the best of circumstances, and it is therefore essential that all parties put their best foot forward to present the most accurate and reliable arguments, proof and expert testimony which they can manage under the circumstances.

In light of the foregoing, it is ordered that the trial in this matter is continued until a date to be determined later.  Defendant's motion for summary judgment [68-1] is dismissed without prejudice to refiling after plaintiffs have filed an amended complaint.

**SO ORDERED** this the 11th day of February, 2011.

**/s/ MICHAEL P. MILLS**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**